**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

ABN AMRO CAPITAL USA LLC, et al.,

        *Plaintiffs*,

        v.

JOHNSON, et al.,

        *Defendants*.

Case No. 2:18-cv-00246-SDW-CLW

Hon. Susan D. Wigenton, U.S.D.J.
Hon. Cathy L. Waldor, U.S.M.J.

Return Date: May 20, 2019

**ORAL ARGUMENT REQUESTED**

**MEMORANDUM OF LAW IN SUPPORT OF NON-PARTIES
AMERRA CAPITAL MANAGEMENT, LLC; AMERRA LATIN AMERICA
FINANCE, LLC; AMERRA AGRI ADVANTAGE FUND, LP;
AMERRA AGRI OPPORTUNITY FUND, LP; AMERRA AGRI
OFFSHORE MASTER FUND II, L.P., AMERRA MULTI STRATEGY
FUND, L.P.; AMERRA AGRI FUND II, LP; AND NANCY OBLER'S
<u>MOTION TO INTERVENE AND FOR A PROTECTIVE ORDER</u>**

SELENDY & GAY, PLLC

1290 Avenue of the Americas
New York, NY 10104
Telephone: 212-390-9000
(*pro hac vice* pending)

COUGHLIN DUFFY LLP

350 Mount Kemble Avenue
P.O. Box 1917
Morristown, NJ 07962
Telephone: 973-631-6002

*Attorneys for Non-Parties AMERRA Capital Management, LLC; AMERRA Latin
America Finance, LLC; AMERRA Agri Advantage Fund, LP; AMERRA Agri
Advantage Fund, LP; AMERRA Agri Opportunity Fund, LP; AMERRA Agri
Offshore Master Fund II, L.P.; AMERRA Multi Strategy Fund, LP; AMERRA
Agri Fund II; and Nancy Obler*

# **TABLE OF CONTENTS**

**Pages**

PRELIMINARY STATEMENT ......................................................................1

RELEVANT FACTUAL BACKGROUND................................................4

ARGUMENT ...............................................................................................8

I.   NON-PARTIES AMERRA MAY INTERVENE AS A MATTER OF
     RIGHT TO PROTECT THEIR INTERESTS ..................................8

     A.   AMERRA's Application For Intervention Is Timely ...........9

     B.   AMERRA Has Sufficient Interest In This Litigation ........10

     C.   AMERRA's Interests Will Be Affected Or Impaired If It Is
          Prevented From Intervening.................................................12

     D.   The Parties' Interests Are Directly Adverse To AMERRA's
          Interests..............................................................................12

II.  GOOD CAUSE EXISTS FOR ISSUANCE OF A PROTECTIVE
     ORDER PREVENTING PLAINTIFFS FROM ABUSING THE
     DISCOVERY PROCESS ...............................................................13

CONCLUSION ..........................................................................................15

# <u>TABLE OF AUTHORITIES</u>

**<u>Pages</u>**

## <u>Cases</u>

*Beckman Indus., Inc. v. Int'l Ins. Co.*,
966 F.2d 470 (9th Cir.), *cert. denied*, 506 U.S. 868 (1992) ...........................8

*Cipollone v. Liggett Grp.*,
113 F.R.D. 86 (D.N.J. 1986) ................................................. 11, 14

*Constand v. Castor*,
Civ. A. No. 15-5799,
2016 WL 5681454 (E.D. Pa. Oct. 3, 2016) ..................................10

*Harris v. Pernsley*,
820 F.2d 592 (3d Cir. 1987) ...........................................................8

*In re Comp. of Managerial, Prof'l and Tech. Emps. Antitrust Litig.*,
Master Dkt. No. 02-CV-2924 (GEB),
2008 WL 3887619 (D.N.J. Aug. 20, 2008) ..................................15

*In re Fine Paper Antitrust Litig.*,
695 F.2d 494 (3d Cir. 1982) ...........................................................9

*Mountain Top Condo. Ass'n v. Dave Stabber Master Builder, Inc.*,
72 F.3d 361 (3d Cir. 1995) ........................................ 8, 9, 10, 11, 12

*NLRB v. Frazier*, 144 F.R.D. 650, 655 (D.N.J. 1992) ...............................................8

*Oppenheimer Fund, Inc. v. Sanders*,
437 U.S. 340 (1978)......................................................................14

*Pansy v. Borough of Stroudsburg*,
23 F.3d 772 (3d Cir. 1994) ........................................................8, 13

*Perryman v. Litton Loan Servicing, LP*,
81 F. Supp. 3d 893 (N.D. Ca. 2015)............................................11

*Robinson v. Horizon Blue Cross-Blue Shield of N.J.*,
No. 12-CV-02981-ES-JAD,
2013 WL 6858956 (D.N.J. Dec. 23, 2013) ..................................13

*Trans Pac. Ins. Co. v. Trans-Pac. Ins. Co.*,
    136 F.R.D. 385, 391 (E.D. Pa. 1991) ..................................................... 11, 15

*Trbovich v. United Mine Workers*,
    404 U.S. 528 (1972).........................................................................................12

## **Statutes**

Fed. R. Civ. P. 1 ...............................................................................................11

Fed. R. Civ. P. 24(a)(2)......................................................................................8, 15

Fed. R. Civ. P. 26(c)(1)(D) ............................................................................. 13, 15

## **Treatises**

Wright & Miller, § 1916 .......................................................................................9

Non-parties AMERRA Capital Management, LLC; AMERRA Latin America Finance, LLC; AMERRA Agri Advantage Fund, LP; AMERRA Agri Advantage Fund, LP; AMERRA Agri Opportunity Fund, LP; AMERRA Agri Offshore Master Fund II, L.P.; AMERRA Multi Strategy Fund, LP; AMERRA Agri Fund II; and Nancy Obler (collectively, "AMERRA")—subordinated lenders to the now defunct Transmar Commodity Group Ltd. ("Transmar")—respectfully submit this Memorandum of Law in Support of their Motion (the "Motion") to Intervene and for a Protective Order Limiting the Scope of Questioning by Plaintiffs ABN AMRO Capital USA LLC; Société Générale; BNP Paribas; Natixis, New York Branch; Macquarie Bank Limited; Bank Hapoalim BM; MUFG Bank, Ltd. (f/k/a "The Bank of Tokyo-Mitsubishi UFJ Ltd., New York Branch"); and Israel Discount Bank of New York (collectively, "Plaintiffs") at the forthcoming depositions of Defendants Peter G. Johnson ("Johnson Sr.") and Peter B. Johnson ("Johnson Jr."), and any contemplated future depositions of Defendants Mary Johnson, Timothy Johnson, Thomas Reich, Nancy Pizzi, or William Yu (collectively, with Johnson Sr. and Johnson Jr., "Defendants"),[1] or any other third-party deposition in the above-captioned action (the "Action" or the "New Jersey Action").

## PRELIMINARY STATEMENT

On March 7, 2019, this Court granted Plaintiffs' request to take the depositions of two incarcerated and defaulted Defendants in this Action: Johnson Sr. and Johnson Jr. With the time for exchanging document discovery having just ended on April 15, 2019 (*see* Dkts. 74, 76), Plaintiffs will now presumably seek (or have already sought) to notice depositions of the remaining Defendants. AMERRA moves to intervene because the discovery Plaintiffs apparently intend to seek against

---

[1] On April 3, 2019, Plaintiffs voluntarily dismissed claims filed against Defendant Richard Gary O'Connor. Dkt. 135.

Defendants in this Action is principally intended to be used in a separate proceeding that Plaintiffs have concurrently brought against AMERRA in New York State court. Because the instant Action is being maintained for the purpose of seeking discovery against AMERRA to be used in another proceeding, AMERRA seeks a protective order for the reasons set forth below.

What the Court may not know, as it is not obvious from the face of Plaintiffs' Complaint in this Action or, for that matter, any other filings on the docket in this Action, is that Plaintiffs are simultaneously pursuing litigation against AMERRA in New York State Supreme Court (the "New York Action"),[2] as Plaintiffs desperately search for a solvent party to sue. The Court may also be unaware that, prior to commencing the New York Action against AMERRA, Plaintiffs first attempted to obtain discovery against AMERRA by serving a Rule 45 subpoena on AMERRA in this Action. This improper subpoena is presently the subject of a motion to quash in the U.S. District Court for the Southern District of New York.[3]

As this Memorandum demonstrates, Plaintiffs are pursuing the New Jersey Action solely as a vehicle to obtain discovery from AMERRA that Plaintiffs can then use against AMERRA in the New York Action. This is clear from numerous facts, including the following: (i) two of the Defendants in this Action against whom discovery is sought (Johnson Sr. and Johnson Jr.) are penurious and incarcerated,

---

[2]   Plaintiffs filed suit against the AMERRA and certain of its affiliates on February 25, 2019 in New York State court. *See* Ex. 1, Compl., *ABN AMRO Capital USA LLC, et al. v. AMERRA Capital Mgmt., LLC, et al.*, Index No. 0651148/2019, Dkt. 2 (N.Y. Sup. Ct.). All citations to "Ex. __" refer to exhibits attached to the Declaration of Timothy I. Duffy in Support of AMERRA's Motion, filed in conjunction with the Motion.

[3]   *In the Matter of Non-Party Subpoena Served in: ABN AMRO Capital USA LLC v. Johnson*, No. 1:18-mc-00554 (S.D.N.Y. Nov. 30, 2018).

and are already the subject of a $352.5 million default judgment in this Action; (ii) one of the Defendants (Richard Gary O'Connor) has already settled; (iii) another of the Defendants (William Yu) has requested that the Court conduct a settlement conference or order mediation and therefore appears likely to settle; (iii) the remaining four Defendants (Timothy Johnson, Mary Johnson, Nancy Pizzi, and Thomas Reich) are unlikely to have anywhere close to the resources necessary to satisfy any meaningful judgment in this Action; (iv) there is apparently no D&O policy that would provide a vehicle for any recovery by Plaintiffs; (v) three of the Defendants in this Action *have already been ordered*, in the prior criminal action, to pay Plaintiffs the same $352.5 million in restitution that Plaintiffs purport to be seeking in this Action; (vi) Plaintiffs are represented by the same attorneys in the New Jersey Action and the New York Action; (vii) Plaintiffs have previously (and unsuccessfully) attempted to use a separate action pending in the Bankruptcy Court as a vehicle to obtain discovery from AMERRA; (viii) Plaintiffs have previously attempted to obtain discovery from AMERRA in this Action through the use of a third-party subpoena on AMERRA, which is presently the subject of a motion to quash in the Southern District of New York, as it is a back-door attempt to obtain discovery against AMERRA for use in the New York Action; and (ix) Plaintiffs, after initially refusing to confirm that they intended to use discovery obtained in this proceeding against AMERRA, then commenced suit against AMERRA in New York State Court, in February 2019, once it became apparent that Plaintiffs would not succeed in obtaining discovery against AMERRA in this proceeding.

Because Plaintiffs are attempting to use depositions of Defendants (and potentially third parties) in this Action to obtain discovery for use against AMERRA in the New York Action, AMERRA brings the instant Motion. The decisions of this Court make clear that Plaintiffs may not maintain this proceeding for the principal

purpose of obtaining discovery against a non-party in another proceeding. Accordingly, AMERRA seeks (i) a protective order from this Court limiting what discovery Plaintiffs may seek at depositions; and (ii) the right to attend depositions in this Action to ensure that Plaintiffs comply with such a protective order.

## RELEVANT FACTUAL BACKGROUND

As this Court is aware, the instant Action concerns Transmar—a defunct supplier and processor of cocoa products founded by the Johnson family, which was owned, managed, and operated by the Defendants in this Action.  Compl. ¶¶ 1, 38. Plaintiffs are lenders that entered into a credit facility with Transmar, loaning them approximately $360 million. *Id.* ¶¶ 71, 134.  Plaintiffs allege that Defendants operated Transmar as a fraudulent scheme and knowingly and intentionally misrepresented Transmar's financial condition and the value of the lenders' collateral. *Id.* ¶¶ 41–139.

Ultimately, Transmar filed for bankruptcy on December 31, 2016, in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").  *Id.* ¶ 133.[4]  Not long after, three of the Defendants, Johnson Sr., Johnson Jr., and Thomas Reich, were indicted in the Southern District of New York for "misrepresent[ing] material information about Transmar's finances" to Plaintiffs.  Ex. 2, Unsealed Indictment ¶¶ 6–8, *United States v. Johnson*, No. 1:17-cr-00482-JSR-1 (S.D.N.Y. Aug. 2, 2017).  All three Defendants pled guilty to conspiracy to commit bank and wire fraud and were sentenced to federal prison. Johnson Sr. was required to forfeit more than $1.5 million and Defendants were ordered to pay $352.5 million in restitution to Plaintiffs.  *See* Exs. 3–5, Judgments

---

[4] That case is captioned *In re: Transmar Commodity Grp. Ltd.*, Case No. 16-13625 (JLG) (Bankr. S.D.N.Y.) (the "*Transmar Bankruptcy*").

in Criminal Cases Against Johnson Sr., Johnson Jr., and Thomas Reich.  Given this history, and particularly in light of the fact that the other Defendants in this Action are generally lower level employees of Transmar, who were more modestly compensated than either Johnson Sr. or Johnson Jr., it is clear that the purpose of the New Jersey Action is not to recover money from Defendants—it is to use this proceeding as a cudgel to obtain discovery that Plaintiffs can then use against AMERRA in the New York Action.

Beginning in January 2017, just weeks after Transmar declared bankruptcy, Plaintiffs moved in the Bankruptcy Court for authority to issue discovery requests on AMERRA, insisting that an "investigation" into AMERRA was required, and representing to the Bankruptcy Court that once it had obtained the records of AMERRA's transactions with Transmar and Transmar's affiliate Euromar Commodities GmbH ("Euromar"), ABN would be able to show AMERRA's central role in the alleged wrongdoing that caused Transmar's demise.  Ex. 6, *Ex Parte Motion for an Order Pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure Authorizing ABN AMRO Capital USA LLC to Issue Subpoenas for the Production of Documents and to Examine the Debtor and Others, Transmar Bankruptcy* (Jan. 23, 2017).  AMERRA, at its own significant expense, agreed to produce to Plaintiff ABN AMRO documents in connection with numerous purchase and sale transactions, as well as loans, involving AMERRA and either Transmar or Euromar.[5]

---

[5]   ABN also obtained over one million documents from Transmar which included nearly 57,000 pages to or from AMERRA and included AMERRA's e-mails with Transmar, Euromar, affiliates of Transmar or Euromar, and the Defendants in the instant Action.

Failing to find the smoking gun they so desperately sought, in May 2017 Plaintiffs concocted a new legal theory against AMERRA in an effort to permit Plaintiffs to serve further discovery requests, this time with their sights on non-party Nancy Obler.   ABN demanded sweeping production of Nancy Obler's communications concerning Transmar and its affiliates and a deposition of Ms. Obler.  Ex. 7, Motion for an Order Pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure Authorizing ABN AMRO Capital USA LLC to Issue a Subpoena for the Further Production of Documents From and the Oral Examination of AMERRA Capital Management LLC, by Nancy Obler ¶ 5, *Transmar Bankruptcy* (May 5, 2017).  In June 2017, the Bankruptcy Court appropriately denied ABN's requests, holding that "it's clear to the Court that ***ABN AMRO has identified Amerra as a litigation target and is seeking to utilize the liberal discovery available under Rule 2004 to further this ultimate litigation***," which is improper.  Ex. 8, Tr. Order at 22:7–11, *Transmar Bankruptcy* (June 9, 2017) (emphasis added).

With the Bankruptcy Court path to discovery sealed off, Plaintiffs switched tacks yet again and, on November 5, 2018, served a non-party subpoena on AMERRA in this Action, seeking 66 categories of documents, many having little or nothing to do with this Action.   Ex. 9, Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action, *ABN AMRO Capital USA LLC v. Johnson*, Civ. A. No. 2;18-cv-00246-SDW-CLW (D.N.J. Nov. 5, 2018) ("AMERRA Subpoena").  In fact, a large chunk of the document requests in that subpoena were squarely aimed at AMERRA's internal activities, transactions, and deliberations,[6] which are of no probative value to

---

[6]  For example, the subpoena sought AMERRA's communications with its own accountants, auditors, and investors, as well as details of AMERRA's

6

Plaintiffs' claims for fraud and misrepresentation against Defendants in this Action—as is starkly apparent from the fact that the Complaint in this Action does not even once mention either AMERRA or Nancy Obler.

Plaintiffs purpose was again clear: they sought to leverage discovery in this Action to obtain non-reciprocal discovery against AMERRA that was unavailable via proper channels.  In response to Plaintiffs' improper tactics, AMERRA filed a motion to quash in the Southern District of New York in which AMERRA made clear that the subpoena was yet another transparent and ill-advised attempt at gamesmanship.  Ex. 10, Memo. of Law in Support of Mot. to Quash Non-Party AMERRA Capital Mgmt., LLC's Non-Party Subpoena, *In the Matter of Non-Party Subpoena Served in: ABN AMRO Capital USA LLC v. Johnson*, No. 1:18-mc-00554 (S.D.N.Y. Nov. 30, 2018).  That motion has been fully submitted and is presently *sub judice*.

Most recently, Plaintiffs have pursued discovery in the instant Action, purportedly against the Defendants in this Action.  However, AMERRA submits that on the basis of the foregoing it seems clear that this Action is not being pursued in good faith, as the Action has no purpose other than to attempt to advantage Plaintiffs in their concurrent New York Action against AMERRA.  The discovery Plaintiffs apparently intend to seek against Johnson Sr., Johnson Jr. and the remaining impecunious Defendants simply cannot be explained—particularly in light of the fact that Plaintiffs have ***already*** been awarded over $350 million in restitution from the most senior employees at Transmar—other than as a transparent and improper backdoor attempt to use depositions against the Defendants in this Action in order to build its case against AMERRA in the New York Action.  AMERRA brings the

_____

transactions with third parties unrelated to this Action.  *See, e.g.*, Ex. 9, AMERRA Subpoena ¶¶ 25, 39, 53.

instant Motion to prevent Plaintiffs from using this Court to obtain non-reciprocal discovery against AMERRA without AMERRA's interests being represented.

## ARGUMENT

## I.   NON-PARTIES AMERRA MAY INTERVENE AS A MATTER OF RIGHT TO PROTECT THEIR INTERESTS

Pursuant to Federal Rule of Civil Procedure 24, upon timely motion, a movant has a right to intervene in a case where the movant "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2).[7] "Rule 24(a) is to be liberally construed in favor of intervention." *NLRB v. Frazier*, 144 F.R.D. 650, 655 (D.N.J. 1992) (internal citations omitted). To meet the requirements of Rule 24(a)(2), the movant must satisfy the following criteria: "(i) the application for intervention is timely; (ii) the applicant has a sufficient interest in the litigation; (iii) the interest may be affected or impaired, as a practical matter by disposition of the action; and (iv) the interest is not adequately represented by an existing party in the litigation." *Mountain Top Condo. Ass'n v. Dave Stabber Master Builder, Inc.*, 72 F.3d 361, 366 (3d Cir. 1995) (quoting *Harris v. Pernsley*, 820 F.2d 592, 596 (3d Cir. 1987)). All four criteria are easily satisfied here and AMERRA should accordingly be permitted to intervene.

---

[7]   Even if the Court were to determine that AMERRA may not intervene as of right, it has discretion to allow AMERRA to participate for the limited purpose of interposing objections at depositions under Federal Rule of Civil Procedure 24(b) governing permissive intervention. *See Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 778 (3d Cir. 1994) (noting that "[t]here is no reason to require such a strong nexus of fact or law when a party seeks [as here] to intervene only for the purpose of modifying a protective order") (quoting *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 474 (9th Cir.), *cert. denied*, 506 U.S. 868 (1992)).

8

## A.    AMERRA's Application For Intervention Is Timely

Courts consider three factors in determining whether an application for intervention is timely: (i) the stage of the proceeding; (ii) the prejudice such delay may cause to the parties; and (iii) the reason for the delay. *In re Fine Paper Antitrust Litig.*, 695 F.2d 494, 500 (3d Cir. 1982). These factors should be weighed based on "all the circumstances." *Mountain Top*, 72 F.3d at 369 (motion for intervention filed four years after litigation commenced was timely where "no depositions [had been] taken, dispositive motions filed, or decrees entered"). In making that determination, "[t]he critical inquiry is: what proceedings of substance on the merits have occurred?" *Id.* Because a "would-be intervenor [under Rule 24(a)(2)] may be seriously harmed if he is not permitted to intervene, courts should be reluctant to dismiss a request for intervention as untimely, even though they might deny the request if the intervention were merely permissive." *Id.* (quoting Wright & Miller, § 1916 at 424). Each of these factors favors intervention in this Action.

*First*, the Action is still at an early stage of its lifecycle. A scheduling order was only entered at the end of October 2018. Dkts. 74, 76. It has since become apparent that Plaintiffs intend to seek depositions, notwithstanding that recovery against the Defendants is all but foreclosed, and Plaintiffs have already been awarded in a prior proceeding the same $352.5 million they claim to seek in this Action. *See* Exs. 2–4. With respect to the depositions of Johnson Sr. and Johnson Jr., those were ordered only as of March 7, 2019, and document discovery was completed in this Action only as of this week. As far as AMERRA is aware, no depositions have yet occurred, and the deadline for completing depositions is July 23, 2019. There is no question, therefore, that this request is timely based on the stage of the proceeding.

*Second*, it is unclear what (if any) prejudice or delay Plaintiffs would suffer by virtue of AMERRA's intervention in this Action. The contemplated intervention would merely enable AMERRA to attend those depositions for the limited purpose of interposing objections to questions unrelated to the Action that are designed to obtain discovery for the New York Action.

*Third*, AMERRA is seeking to intervene now because it only recently learned of Plaintiffs' intent to take depositions in this Action, which as discussed above, will serve no purpose other than the improper tactical one of leveraging this Court's authority to obtain discovery that is principally intended to be used in another proceeding. *Mountain Top*, 72 F.3d at 370 (timeliness "should be measured from the point at which the applicant knew, or should have known, of the risk to its rights"). That AMERRA—which was itself a victim of the Defendants' fraud— would need to intervene to protect its interests was neither apparent nor reasonably expected when this Action began, as Plaintiffs only recently confirmed their true intentions on February 25, 2019, when they sued AMERRA in the New York Action. As such, the Motion is clearly timely.

### B.    AMERRA Has Sufficient Interest In This Litigation

"Proposed intervenors need not have an interest in every aspect of the litigation. They are entitled to intervene as to specific issues so long as their interest in those issues is *significantly protectable*." *Mountain Top*, 72 F.3d at 368 (emphasis added) (internal citations omitted). Indeed, those interests need not even be monetary. *See, e.g.*, *Constand v. Castor*, Civ. A. No. 15-5799, 2016 WL 5681454, at *3 (E.D. Pa. Oct. 3, 2016) (recognizing that an "interest in confidentiality is sufficient to support limited intervention under Rule 24(a)"). They need only be "legal interest[s] as distinguished from interests of a general and indefinite character." *Mountain Top*, 72 F.3d at 368 (internal citations omitted).

10

Thus, intervention is appropriate where, as here, "there is a tangible threat to a legally cognizable interest." *Id.*

AMERRA has a significant legal interest in maintaining an orderly, fair, reciprocal, and efficient discovery process—an interest embodied in the Federal Rules themselves. *See* Fed. R. Civ. P. 1 (providing that the Federal Rules "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding"). This Court, too, has an interest in not being used as a tool by parties seeking to leverage the Court's authority to obtain discovery principally for use in another proceeding. It is now clear, however, that Plaintiffs do not share AMERRA's interests and instead plan to seek depositions in this Action against Defendants, from whom there is no realistic prospect of recovery, for the sole purpose of eliciting testimony that might aid Plaintiffs in the New York Action. That is an affront to the purpose of liberal discovery under the Federal Rules.

Although, ordinarily, discovery obtained in one case may be used in another for a legitimate purpose, a party may not obtain discovery in one action for the sole purpose of obtaining an advantage in another proceeding. *Perryman v. Litton Loan Servicing, LP*, 81 F. Supp. 3d 893, 901 (N.D. Ca. 2015); *Trans Pac. Ins. Co. v. Trans-Pac. Ins. Co.*, 136 F.R.D. 385, 391 (E.D. Pa. 1991); *cf. Cipollone v. Liggett Grp.*, 113 F.R.D. 86, 91 (D.N.J. 1986) (discovery may be used in another proceeding "[s]o long as the initial litigation has not itself been instituted in bad faith for the purpose of obtaining documents for other actions"). Here, AMERRA has amply demonstrated its interest in intervention.

**C.     AMERRA's Interests Will Be Affected Or Impaired If It Is Prevented From Intervening**

Allowing depositions to go forward without AMERRA's presence would enable Plaintiffs to circumvent the normal channels of discovery, in which counsel for AMERRA may make appropriate objections.  As the deponents in this Action (*i.e.*, Defendants) will have no incentive to offer testimony that would be helpful to AMERRA and, indeed, may be inclined to deflect blame onto AMERRA, including as a condition for entering into a favorable settlement with Plaintiffs, the absence of counsel for AMERRA at these depositions would be inherently prejudicial to AMERRA's legal interests.  Thus, in order to protect their interests, it is essential that AMERRA be able to participate in this Action for the limited purpose of interposing objections at upcoming depositions, including of Johnson Sr. and Johnson Jr.

**D.     The Parties' Interests Are Directly Adverse To AMERRA's Interests**

The Third Circuit, citing U.S. Supreme Court precedent, has held that it is sufficient that an applicant seeking to intervene as of right simply show his interest "may be" inadequately represented by the parties present.  *Mountain Top*, 73 F.3d at 368 (quoting *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972)).  Ultimately, the "burden of making that showing should be treated as minimal." *Id.* Here, there is no dispute that a fraud was perpetrated by key members of the Johnson family.  As such, depositions are likely to focus on the remaining Defendants proving they did not personally know or participate in that fraud.  The focus will not be on clearing non-parties.  Indeed, if they think it helpful, the Defendant deponents may even be inclined to shift blame onto non-parties, such as AMERRA.  It is also possible that Plaintiffs will suggest to the Defendants in this Action (some of whom

12

are apparently unrepresented) that providing deposition testimony that inculpates AMERRA will be helpful in receiving a favorable settlement from Plaintiffs.

Given that, it is likely that AMERRA will be inadequately represented in these depositions and, therefore, should be permitted to intervene.

## II.    GOOD CAUSE EXISTS FOR ISSUANCE OF A PROTECTIVE ORDER PREVENTING PLAINTIFFS FROM ABUSING THE DISCOVERY PROCESS

Pursuant to Federal Rule of Civil Procedure 26(c)(1)(D), a "court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense" including by "forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters."  Likewise, "[a] court may issue a protective order pursuant to Federal Rule of Civil Procedure 26(c) to regulate the terms, conditions, time or place of discovery."  *Robinson v. Horizon Blue Cross-Blue Shield of N.J.*, No. 12-CV-02981-ES-JAD, 2013 WL 6858956, at *7 (D.N.J. Dec. 23, 2013).  The party seeking a protective order bears the burden of demonstrating the good cause for the order.  *See Pansy*, 23 F.3d at 786.  Good cause exists where one party seeks discovery for an improper purpose.  *Id.* at 787 (finding that "a factor to consider is whether the information is being sought for a legitimate purpose or for an improper purpose").  AMERRA easily meets that burden.

AMERRA submits that Plaintiffs are pursuing the instant Action in bad faith.  Some of the Defendants have already pled guilty to criminal fraud, Plaintiffs voluntarily dismissed claims against another Defendant, and the entire amount purportedly sought from Defendants in this proceeding has already been awarded to Plaintiffs.  Moreover, there does not appear to be any D&O policy that would provide a separate source of recovery to Plaintiffs, and there is no indication that any

13

of the Defendants have anywhere close to the resources to satisfy even a fraction of the judgment Plaintiffs are purportedly seeking in this Action.

To claim that Plaintiffs are pursuing this Action in order to seek a recovery from Defendants blinks reality.   Rather, the only conclusion this Court can reasonably draw from the facts—and from the tactics Plaintiffs have pursued of attempting to seek discovery from AMERRA in both this proceeding and in the Bankruptcy Court—is that Plaintiffs will use the upcoming depositions in this Action for the sole purpose of leveraging this Court's authority to obtain discovery for use against AMERRA in the New York Action.

Moreover, Plaintiffs are likely counting on the fact that the Defendants in the instant Action will be eager to lay the blame for their crimes and bad acts on a convenient scapegoat—AMERRA—and that they will, therefore, provide Plaintiffs with information on AMERRA that Plaintiffs would never obtain in depositions in the New York Action, where AMERRA's counsel would be present and would have the opportunity to ask questions and interpose appropriate objections.  It is precisely because Plaintiffs are maintaining this Action for the sole purpose of obtaining discovery for use in the New York Action that a protective order is warranted. *Cf. Cipollone*, 113 F.R.D. at 91 (an action may not be pursued in bad faith in order to obtain discovery for use in another proceeding).  The U.S. Supreme Court has stressed the importance of this constraint as well.  *See Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 352 n.17 (1978) ("In deciding whether a request comes within the discovery rules, a court is not required to blind itself to the purpose for which a party seeks information.  Thus, when the purpose of a discovery request is to gather information for use in proceedings other than the pending suit, discovery properly is denied.") (internal citations omitted).  Indeed, New Jersey federal courts have previously denied discovery where, as here, those requests were deemed to be

"pretextual" and a "fishing expedition." *In re Comp. of Managerial, Prof'l and Tech. Emps. Antitrust Litig.*, Master Dkt. No. 02-CV-2924 (GEB), 2008 WL 3887619, at *12 (D.N.J. Aug. 20, 2008) (rejecting plaintiff's request for discovery regarding the existence of per se antitrust violations where it "ha[d] not previously alleged" one). Likewise, courts in this circuit have held that parties may not obtain discovery in one action for the sole purpose of obtaining an advantage in another proceeding. *Cf. Trans Pacific*, 136 F.R.D. at 391.

In light of Plaintiffs' track record of abusing the discovery process, AMERRA respectfully requests that this Court provide appropriate safeguards to ensure that this Action is not used simply as a vehicle for obtaining non-reciprocal discovery against AMERRA. AMERRA therefore seeks a protective order to preclude questions by Plaintiffs at deposition that go beyond whether Defendants defrauded Plaintiffs, which is the sole issue in this Action. Any questions about AMERRA or Nancy Obler should, as a presumptive matter, be irrelevant to such issues. Although the Federal Rules provide for liberal discovery, a proceeding may not be maintained in bad faith that is intended only to obtain discovery in another action. Because that is precisely what Plaintiffs are doing here, a protective order is appropriate.

## <u>CONCLUSION</u>

For the foregoing reasons, AMERRA respectfully requests that this Court, pursuant to Rules 24(a) and 26(c) of the Federal Rules of Civil Procedure, grant the Motion and enter a protective order limiting the scope of questioning by Plaintiffs.

Dated:  April 18, 2019                    Respectfully submitted,
        Morristown, New Jersey

                                  By:  */s/ Timothy I. Duffy, Esq.*
                                  Timothy I. Duffy
                                  COUGHLIN DUFFY LLP
                                  350 Mount Kemble Avenue
                                  P.O. Box 1917
                                  Morristown, NJ 07962
                                  Telephone: 973-631-6002
                                  E-mail: tduffy@coughlinduffy.com

Jordan Goldstein (*pro hac vice* motion pending)
Faith Gay (*pro hac vice* motion pending)
David Elsberg (*pro hac vice* motion pending)
SELENDY & GAY, PLLC
1290 Avenue of the Americas
New York, NY 10104
Telephone: 212-390-9000
E-mail:  jgoldstein@selendygay.com
        fgay@selendygay.com
        delsberg@selendygay.com

*Attorneys for Non-Parties AMERRA Capital Management, LLC; AMERRA Latin America Finance, LLC; AMERRA Agri Advantage Fund, LP; AMERRA Agri Advantage Fund, LP; AMERRA Agri Opportunity Fund, LP; AMERRA Agri Offshore Master Fund II, L.P.; AMERRA Multi Strategy Fund, LP; AMERRA Agri Fund II; and Nancy Obler*

16

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that on April 18, 2019, I electronically filed the foregoing Memorandum of Law in Further Support of AMERRA's Motion with the Clerk of the Court using the CM/ECF system which will automatically send e-mail notification of such filing to all counsel of record.

Dated:  April 18, 2019              Respectfully submitted,
       Morristown, New Jersey

By:  */s/ Timothy I. Duffy, Esq.*
        Timothy I. Duffy
        COUGHLIN DUFFY LLP
        350 Mount Kemble Avenue
        P.O. Box 1917
        Morristown, NJ 07962
        Telephone: 973-631-6002
        E-mail: tduffy@coughlinduffy.com

        *Attorneys for Non-Parties AMERRA*
        *Capital Management, LLC; AMERRA*
        *Latin America Finance, LLC; AMERRA*
        *Agri Advantage Fund, LP; AMERRA Agri*
        *Advantage Fund, LP; AMERRA Agri*
        *Opportunity Fund, LP; AMERRA Agri*
        *Offshore Master Fund II, L.P.; AMERRA*
        *Multi Strategy Fund, LP; AMERRA Agri*
        *Fund II; and Nancy Obler*